24-5-0-7-0 and we'll hear from the appellant. Good morning, your honors. Thomas LeBlanc on behalf of the appellant Cheyenne Lee and with me today at the council table is my co-counsel and law partner Matthew Freed. On March the 13th of 2020, Deputy Cheyenne Lee was tasked with serving an emergency order of protection on Mr. Jorge Martinez. Earlier that day a judge in District Court in Tillman County had determined that there was a need for an emergency order to protect two infant children that were in the home with Mr. Martinez. Deputy Lee arrived at that home for that purpose, was quickly encountered with Mr. Martinez and that encounter escalated to an altercation and ultimately escalated to the use of deadly force and Deputy Lee shooting Mr. Martinez. The estate of Mr. Martinez filed this lawsuit against Rogers County and against Deputy Lee and among other claims, there was a claim against Deputy Lee for unlawful arrest without probable cause and excessive force. As this court knows, previously the District Court granted Deputy Lee's motion for summary judgment on qualified immunity looking only at the first prong of qualified violation. That ultimately was reversed by another panel of this court and was remanded for the District Court to look only at the remaining issue of whether the law was clearly established. That's the issue that brings us here today and Your Honor, it is clear from the record before this court that the plaintiff appellee failed to meet their burden on qualified immunity, failed to show that the law was clearly established. Additionally, the District Court, in its opinion, took an impermissibly high view of defining the applicable law. On those bases... Before we get to the law, can we talk about what the universe of facts is? My memory is that under Lewis v. Tripp on an interlocutory appeal from the denial of qualified immunity, we look at the universe of facts that the District Court concluded that a reasonable fact finder could find. Is that your understanding? It is, Your Honor. That's my understanding in part. Additionally, in Medina v. Cram, this court also acknowledged that you're not limited to looking only at the version of the facts being argued by the plaintiff, but you may also look at and consider any and all of the undisputed facts that are supported by the record. Okay, let's say, of course, we have the blatantly contradicted under Scott v. Harris exception and the like, but let's start with those facts that the District Court concluded that a fact finder could reasonably find. My understanding from footnote 2 of the that they are going to credit the undisputed facts that the prior panel and the opinion authored by Judge Matheson regarded as undisputed facts. Is that right? Actually, Your Honor, when you look at that previous decision, there were only two facts that the panel previously identified as undisputed. Yeah, and that's really not my question. Is that what the court said? The court did acknowledge, the District Court did acknowledge that it would, yes, recognize the limited facts that the panel had acknowledged as being undisputed. And it cited page 10 of the opinion, correct? Yes, sir. And on page 10, the heading is not undisputed facts, disputed facts. And your point is well taken. Of course, in the prior panel, they weren't talking about what facts were undisputed, as you point out. They were talking about the variety of factual disputes that existed and those facts that were disputed, not undisputed. Do you think that the judge actually, that that's a typo and that he meant to incorporate the disputed facts since he's citing page 10 and the heading is disputed facts, not undisputed? I was perplexed as well, Your Honor, by that footnote because as I started to mention, there actually are two undisputed facts that are under that disputed fact title. One was that there was a protective order and the other was that the Rogers County Sheriff's Office had been ordered by the district judge to serve the protective order. Yeah, and neither one of those entered into the opinion, correct? Correct. So it is a bit of a mystery and I would argue here, Your Honor, that this panel's obligation is to accept those undisputed facts, apply them to the law to determine whether it was clearly established. I think this panel also has to look at the disputed facts in the light most favorable to the non-moving, as the previous panel did. I think that's part of your obligation. I think part of your obligation also, though, is to look at the complete record because, as you know, Your Honor, when you're looking at whether or not an officer is entitled to qualified immunity under both prongs, this court has to consider the totality of the circumstances. And while you must view the disputed facts in the light most favorable to the non-moving, you must also apply those to the law from the perspective of a reasonable officer in that scene and in that circumstance in order to determine whether or not the law was clearly established sufficiently to put any reasonable officer in that circumstance on notice. Every reasonable officer must be on notice that the conduct would be unlawful. Well, are there any facts that the family members spoke of and would be testifying about that you don't think should be considered as part of our review? Don't we just take those as true? Yes, Your Honor, and if I may, there are a number of facts that have not been dealt with at all by the district court in the opinion that we're currently looking at and is currently on appeal. Were those facts suggested in the district court? Yes, Your Honor. So, for example, as the district court did acknowledge in footnote 2, it's undisputed that there was an emergency order for protection, that there were two infant children in the home who needed protection on an emergent basis. That's undisputed. It's also undisputed that that emergency order of protection expressly stated that there is a weapon on the property and expressly stated that firearms must be surrendered to the Sheriff's Department. These are undisputed facts of which Deputy Lee had notice. How do you reconcile that, counsel, with the statement on page 27 of the prior opinion that says, viewed in the light most favorable to Ms. Ibarra, the summary judgment record includes evidence that Mr. Martinez had, it includes evidence that he was suspected of no crime, had no weapon? So, should we just say, prior panel, you were wrong? Would you view the evidence in the light most favorable to the plaintiff? Your Honor, I believe the prior panel was correct in acknowledging that fact, but the fact of what was found afterward, for example, in Taylor versus Salt Lake City, the panel affirmed summary judgment on qualified immunity. In the case where the suspect had his hands in his pants, the officer mistakenly interpreted and believed there would be a firearm, but after the fact, it was determined he was unarmed. Okay, so we can accept then, as I understand it, that Mr. Martinez actually ended up no weapon. It was not Cheyenne Lee's understanding, but that he actually had no weapon. Correct. And how about the next statement, that viewed in the light most favorable to Ms. Ibarra, the summary judgment record includes evidence that Mr. Martinez posed no threat to Deputy Lee. Should we say, Judge Matheson, you were just wrong on that? Your Honor, again, on that particular question, I think in terms of deciding whether or not a jury could find that on disputed facts, whether a jury could find that there is a constitutional violation, is a separate analysis from whether or not the law was clearly established. Here, I think with this panel looking at the totality of the circumstances, you have to consider the fact that there is no dispute that Mr. Martinez is resisting arrest. Well, yeah, and that's my next question. The next clause actually says, that viewed in the light most favorable to Ms. Ibarra, the summary judgment record includes evidence that Mr. Martinez only minimally resisted arrest. So, do we credit that? Well, what you must also credit along with that, Your Honor, is the undisputed fact that he did resist, that this struggle continued from the hallway, on the floor, into the bedroom, and during that time, one handcuff was placed on Mr. Martinez's wrist, which is undisputed, and at that time, he now has a steel handcuff as a weapon. Oh, so he does have a weapon? He clearly has a weapon. I thought you just said we should credit Judge Matheson saying that he did not. We were discussing the firearm issue. Well, the word was weapon. I apologize, then, Your Honor. I understood your question to be, on the one hand, Oh, I'm sorry. On the one hand, the emergency order of protection referenced a weapon and firearms on the premises. I thought that was your question. I apologize. It was my mistake. I was really meaning to ask, which Judge Matheson says that Martinez had no weapon. I apologize. The undisputed record clearly is that he had a steel handcuff attached to his wrist, and the plaintiff's own expert acknowledged, and it's in the record, that that is a weapon. In the eyes of any reasonable officer on the scene at that time, that is a dangerous weapon. But there is so much testimony from the family members that don't portray what you're portraying, and you have to live with those facts, that the officer is overaggressive, that the decedent was passive, other than wanting the officer out of the house, which I think he could demand. And so, when we lay out the facts, if you put them in a column of admissible evidence, what you have is an extremely violent, unprovoked officer, and a man who got killed. That's what you have. And when Judge Bacharach asked you at the start about the Johnson versus Jones question, and you have to accept the facts, you said something to the effect, most of them, or something like that. What were you talking about? You have to accept all of them, don't you? You do have to accept those facts, Your Honor. Tell me this, this is what I need help with. If you accept those facts, and both witnesses come in, and it's up to the jury to decide whether their account is truthful, certainly, but if you accept their facts, then how do you not have a constitutional violation? Well, and that was the basis of the previous panel's ruling, unquestionably. We're dealing with a different issue here, Your Honor, which is whether or not the law is clearly established. It's really not a different issue. First, you have to set up the pins, and then you knock them down. And setting up the pins is, what are the facts that we're evaluating the clearly established law piece on? And those facts, that, as I say, we give the seed and all the benefit of those facts, and the family testimony, when you say all of those facts, and you see just what this encounter is that they described, it's much worse than Tennessee v. Garner, and they don't need a case directly on point if the facts are egregious, and it's an obvious violation. Why is it not, is my question to you. Your Honor, when you look at, for example, the Sobolus case that the plaintiff relied on, and take into consideration Judge Docorock's dissent in that decision, you look then at the Supreme Court's later decision in Talaquah v. Bond, you look at Esther v. Kramer, you look at Taylor v. City of Salt Lake City, what we see through all of these is that the court has to look at the totality of the circumstances with respect to whether or not there's case law sufficiently on point where the facts are sufficiently similar that would tell every reasonable officer in that situation that his conduct is unconstitutional, and respectfully, Your Honor, that case law has not been presented to the district court. That case law is all fine. It's all fine for those facts in Taylor, and there's a question, was he going for a gun, and so forth. This is a denial of qualified immunity. Some of those cases are grants, which is a different standard, and really a whole different ballgame. Question remains. If you give all of the facts that the family will testify about, and the peaceful decedent versus the over-aggressive officer, you don't say, well, he had a handcuff on him, and he might have used it against the officer. That doesn't even come into play. What you do is you say you managed to get him on the ground, get one handcuff on before he killed him. With respect, it does come into play, Your Honor. This court has recognized that an officer does not have to wait to see the barrel of a gun, or the blade is a knife, before taking action to protect what a reasonable officer could infer. This is a jury argument. You're telling me that a jury could conclude that, and I don't dispute that. What I dispute is that we're supposed to make that decision, whether or not that could be used as a weapon, and in fact was being used as a weapon. That's up to the jury, and the plaintiff has enough evidence that would counter that, that it goes to the jury, not to us. I guess I'm wondering why we're here. Your Honor, I would argue that what we have is a continuous fluid event, a set of events, tense, rapidly evolving. Deputy Lee was alone in cramped close quarters. He was involved in a struggle. There's no debate about that. He was separated from his radio, unable to call for help. There are adults in the house who are actively interfering with his ability to get control of the situation. That's a great jury argument, but that's not their fact. I want to add to that that Deputy Lee is 6 feet tall and 240 pounds, and Ibarra was 5 foot 4 and 117 pounds, or something like that, so it's... And I acknowledge my time is up, Your Honor. If I may, I do believe the fact that you just articulated actually speak to the actual level of resistance from Mr. Martinez, as opposed to that which the family testified to. It is a bit inconceivable, if you would, that a deputy much larger would not be able to simply turn a person around and put handcuffs on them, which is exactly what he attempted to do, but instead this struggle ensued and ultimately resulted in the reason that we're here, Your Honor. You're out of time, but we will give you one minute for rebuttal. Thank you, Your Honor. We'll hear from the appellate. Thank you. Good morning to all of you. It's a pleasure to be in this fine law school, where I know my co-counsel Ken Underwood probably went to some years ago. From our position, and this has been discussed to some extent by all of you, particularly Judge Bacarach and Judge Phillips, that for this court to have jurisdiction in analyzing this at this juncture, it has to assume all the plaintiff's facts. And we not only have the prior decision from this court, but we have the recent district court decision. What do we do with the anomaly that the district court in footnote 2 purported to define the universe of facts based on the undisputed facts that the panel found? And as your adversary noted, there was very little that was undisputed in the opinion, and the opinion's focus, particularly on the page that was cited in footnote 2, page 10, was disputed facts, not undisputed. Probably a typo. Probably. What's that? Probably a typo. I think that was not the intent of the court from reading the entire decision. And some of the, from a plaintiff's perspective, and this was held both by the district court and the prior court of appeal, that Mr. Mark, and in addition to being 5'4", 170 pounds, 117 pounds, as Judge Seymour pointed out, he was in his underwear asleep in his own house when all this started. But he was unarmed. He posed no threat. He was not resisting. He was beaten up for no apparent reason. He was kind of resisting, wasn't he? Pardon? Wasn't he kind of resisting? Well, they do say, Judge Seymour, there was perhaps minimal resistance when he originally was grabbed to be handcuffed, where he pulled away asking, why am I being arrested, or words to that effect. But after he asked the deputy to leave his house, the chronology then is his arm was grabbed, twisted, he was pinned up against the wall, punched in the face and head, taken down to the ground. On the ground there were hammer fist punches, elbows, knee strikes, and then the handcuff was tightened more to inflict additional pain. And then the shots happened soon after that without warning while he was visibly unarmed on the ground with the officer over him shooting downward. But the district court did hold, and I think Judge Baccarat was talking about this, that Deputy Lee shot an unarmed individual who was not resisting arrest and who posed no threat to the officer, including no physical threat. So from our perspective, these facts are so important when we're looking at the second prong analysis of qualified immunity. Because was there case law or precedent that suggested under those facts the law was clearly established? On the claim for unlawful arrest in district court, did you argue to the district court that the claim for unlawful arrest as opposed to the excessive force was clearly established? I did not see it in your response, but maybe I overlooked it. What I think may have happened, Your Honor, is I don't think in the moving papers they argued that it was not clearly established. So in responding to their motion, when they said the law wasn't clearly established, such as the deadly force, we responded to that. They also didn't bring that issue up with the non-deadly force. So I think technically, Judge Baccarat, you're probably correct on that, but I think the reason that we never responded to it is because it was never brought up in their affirmative motion. Is that right? If they argue that no constitutional violation occurred, then automatically they've argued that there wasn't any clearly established law, haven't they? That's a great question, Judge Phillips. I'm not sure. My experience has been normally, because we have the first prong and second prong analysis of qualified immunity, normally someone says, we don't think there's evidence to support a constitutional violation. That's prong one, and they may go on to say, and even if there was, we don't believe the law was clearly established at the time, and they never made that subsequent argument. I guess one could say they don't need to. I think the onus is on you, on both prongs. Okay. That may be the case, and I don't want to argue something that I'm behind on, but what I'm hoping to point out, which to me is, I feel, the heart of this, is whether preexisting precedent applies with obvious clarity to the conduct at issue. And since we have, under plaintiff's facts, including the witness testimony, as you mentioned, Judge Phillips, that we have an unarmed man who's not threatening at all, being shot without warning, then we go back to Garner as a starting point. First, I would argue it falls within the obvious, under those facts. Hope and Brousseau from the Supreme Court would apply. That's number one. Number two, Garner specifically says, a police officer may not seize an unarmed, non-dangerous suspect by shooting him dead. Under plaintiff's facts, that's what we have in this case. And multiple Tenth Circuit opinions, including Huff v. Reeves, Rivas v. Frost, incorporated as part of their precedent and talk about Tennessee v. Garner. One of the quotes is, officers, this is from the Tenth Circuit, officers are prohibited from using deadly force against a person when it is apparent that the person poses no physical threat to the officer or others. And again, this would be on plaintiff's facts. Then we listed various cases, and I am aware that at least in one or two of them, some of your honors were dissenting opinion. But the facts of those cases were very, very different than this case. Ceballos is one of them, where obviously you have someone with baseball bats who's refusing to drop them, approaching the officers, swinging the bats. But even then, in 2019, the majority found that Ceballos had a clearly established right to be free from excessive force. And we would submit the facts of that case are much worse for the plaintiff, if you will, than the non-dangerous unarmed person in this case. We also cited Carr, which is a 2003 case, Walker, a 2006 case, and Tenario, a 2015 case. And importantly, the majority holding in Tenario said, it's clearly established that a suspect holding a knife, not a gun, not charging at, and no stabbing or slicing motion towards the officers, it would be unreasonable for the officer to use deadly force against the suspect. That's a person with a knife. Obviously, we have someone unarmed here, and the factual findings was he never did anything aggressively to punch, to attack, to assault in any way the officer. And then Huffey Reeves, a 2021 case from this district, held, and we believe this is important for the analysis, pre-existing precedent as of January 2016, clearly established that officers are prohibited from using deadly force against a person when it is apparent that he poses no physical threat. So going back to the facts, we believe Your Honors have to assume for purposes of this issue, there was no threat, no physical threat, let alone an immediate threat of death or serious bodily injury. So once the court adopts that and makes that assumption, which we believe you need to for purposes of this analysis, we believe the law was clearly established. There's also a recent case that came out, I think in 2024, from this district called Clerkley v. Holcomb. And in that case, it held that it was clear in 2019 that an officer responding to a potentially dangerous situation could not use deadly force against an unarmed, non-threatening person. So in short, with respect to the deadly force claim on plaintiff's facts, which we believe this court has to assume, and quite frankly, we raise the jurisdictional issue only because it seemed in the filings that oftentimes my opposition was arguing their facts as opposed to accepting our facts. But we think the law was clearly established. It even fell within the obvious. And so the qualified immunity on the deadly force, we believe, should be denied. I think given all the facts of this case and all the material factual disputes, this is just one of those cases that needs to be decided by a jury. And some of the arguments my colleague made on the other side may be arguments for a jury that they may or may not accept. But for purposes of deciding whether there's evidence on plaintiff's facts to support a constitutional violation or whether the law was clearly established, we believe that the plaintiff should prevail on both of those issues. I don't know if any of you have any other facts. I just have one question. On the claim for unlawful arrest on prong two, if we conclude that for any of these four alleged crimes that it wasn't a clearly established violation, would we need to reverse on that claim? Not the deadly force claim, but unlawful arrest. I guess potentially, yes. It's interesting in this case that the officer claimed he only was going to arrest him for the threats, which is disputed. But then we have to look at arguable probable cause and what else objectively he could have been arrested for. So I think to technically answer your question, Judge Bacharach, if you found on any one of them that the law was not clearly established and you felt that issue was clearly before you, then the answer would probably be yes, even though it pains me in some ways to say that. But I think that's probably correct. On the claim for unlawful arrest as respect to obstruction of a peace officer, even if we credit the facts in Judge Mathison's prior panel opinion, why was it only a plainly incompetent officer would have found arguable probable cause for obstruction of a peace officer? In other words, even if he was minimally resisting arrest, which I think was the phrase from Judge Mathison, why wasn't it for Deputy Lee at least arguable that he was obstructing a peace officer? I think it's another very good question, but here's what my response would be. First of all, as we know, and I think there's even a finding in the record that there was, at least on plaintiff's facts, no consent to enter the home. And then Mr. Martinez, which he had the right to do as he was standing there in his underwear just being awoken from sleep, asked the officer to get out of the house. The officer never properly served the protective order, which is also in the record, and then went to grab him, presumably to handcuff him or arrest him without telling him what he was arresting him for. And if you really think about it, the only thing in the record that supports this minimal resistance in the beginning was him pulling away at that point. So arguably, if it wasn't a lawful arrest, hypothetically, then a person might have the right at least to minimally resist an unlawful arrest. So if the basis of the probable cause for the unlawful arrest was him pulling away after the officer grabbed him to presumably arrest him without probable cause, I'm not sure that works to say, ah, that is now the basis for arresting him in the first place. Because up to the grabbing, Jorge just standing there saying, get out of my house in no uncertain terms, I don't believe, I think he had the right to do that. I don't think that Judge Baccarat in and of itself would support the obstruction. So that's the problem that we have with it, because this minimal resistance that's talked about is after the grabbing and the arm lock and starting to put him up against the wall and punching him. And so if that was excessive force, which the lower court found that the jury could find the nonlethal force was also excessive, then arguably he had a right to resist that. So I guess the problem with that scenario, anytime someone gets arrested without probable cause and the officer grabs him without telling him why they're trying to arrest him, and the person tenses up or pulls away, then the officer could say, well, now I have my probable cause because he was obstructing me. So that's the issue we have with that point. Thank you. Okay. Thank you all very much. Thank you. Thank you. I'll pick up actually on that issue. Part of the problem with the district court's order is there is no analysis at all with regard to either the false arrest claim or the excessive force claim. There is a very high-level statement of the law with regard to, for example, we're free from arrest without probable cause. Well, that's a true statement, but there's no analysis at all of either the facts or the applicable law. And as we've covered extensively in our brief, on the false arrest claim, the court has to look at the state statute that was at issue, for example, the obstruction statute and any state law interpreting that statute. And I think it's very clear, Your Honor, that any delay or obstruction is sufficient probable cause and certainly arguable probable cause. And this case law that we provided shows even words alone is sufficient for an obstruction violation of that statute. And so we would argue, Your Honor, that when you look at the facts that actually were admitted by the plaintiff, even in the light most favorable to the plaintiff, I see that my time is up. You can go ahead and finish that thought. Thank you. But briefly. Thank you. The sequence of events simply is Mr. Martinez comes out, is immediately yelling, get the F out of my house, using the B word, cussing at him, yelling. That is clearly delaying, if nothing else, delaying the service of this emergency order of protection. Arguable probable cause clearly triggers at that moment. And then from there we get into was he resisting and the law that we provided in that issue as well, Your Honor. Thank you, Counsel. Very well presented in your briefs and oral arguments today. The matter will be submitted. Thank you, Counsel. You may be excused.